CHRISTOPHER CHIOU
Acting United States Attorney
United States Attorney
District of Nevada
Nevada Bar. No. 14853
BIANCA R. PUCCI
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Bianca.Pucci@usdoj.gov
*Attorneys for United States of America*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No.: 2:18-cr-00302-JAD |
| vs. | ) **Government's Sentencing Memorandum** |
| RICHARD FRED DITTMER II, | ) |
| Defendant. | ) |

**CERTIFICATION: The undersigned counsel certifies that this memorandum is timely filed**.

## I.  Introduction

Defendant Richard Fred Dittmer II received hundreds of child pornography files. These files included depictions of toddlers as well as sadistic and masochistic conduct. Dittmer II ultimately pleaded guilty to the offense of *Receipt of Child Pornography*. In consideration of all of the factors under 18 U.S.C. 3553(a), a sentence of 87 months is sufficient but not greater than necessary to further the goals of sentencing. The government further requests a lifetime term of supervised release with the imposition of all of the conditions proposed in the Presentence Investigation Report (PSR).

## II. Statement of Facts and Procedural History

In August of 2014, Homeland Security Investigations (HSI) Las Vegas initiated an online peer-to-peer (P2P) investigation into the distribution of child pornography from an IP address registered to Richard Dittmer at a residence in Las Vegas.[1] Dittmer II and his son, Richard Dittmer III, both resided at the address. In September of 2014, a search warrant was executed on the Dittmer residence.[2] Investigators recovered several electronic devices that contained a total of 60 videos and 593 images of child pornography.[3] All items seized came from Dittmer II's bedroom.[4]

Dittmer II claimed ownership and use of the computers located inside the residence. Dittmer II also asked hypothetical questions that led investigators to believe that Dittmer II was the offender.[5]

In June of 2016, a separate investigation conducted by the Las Vegas Metro Police Department (LVMPD) identified a file sharing network tied to an IP address associated with the Dittmer residence.[6] LVMPD also received a CyberTip on an additional IP address that likewise resolved back to the Dittmer residence. In November of 2016, another search warrant was executed on the Dittmer residence.[7]

Dittmer II was *Mirandized* and denied committing any of the conduct tied to the 2016 investigation.[8] However, Dittmer II stated that, back in 2014, when the previous search warrant was served, agents seized his computers and that (at that time) he knew the

---

[1] PSR ¶ 10.
[2] *Id.* at ¶ 12.
[3] *Id.* at ¶ 18.
[4] *Id.* at ¶ 16.
[5] *Id.* at ¶ 15-16.
[6] *Id.* at ¶ 21.
[7] *Id.* at ¶ 24.
[8] *Id.* at ¶ 29.

computers contained child pornography.[9] Dittmer II further admitted to having a problem with child pornography 10 years ago and claimed he must have forgotten to delete it.[10] Dittmer II further claimed he no longer viewed child pornography.[11]

On September 26, 2018, Dittmer II was charged with the receipt of child pornography arising out of the 2014 investigation and his son (Dittmer III) was charged with the 2016 offenses.[12]

On February 1, 2021, Dittmer II pleaded guilty to *Receipt of Child Pornography*, as charged in the indictment.[13] The parties received the PSR in March of 2021. The PSR acknowledged that the government agreed to a downward variance equivalent to three levels, for a guideline range of 87 to 108 months.[14] The PSR recommends an additional downward departure, leading to an advised term of imprisonment of 84 months.[15]

Sentencing is currently scheduled for July 12, 2021, at 10:00 a.m.

### III.   Argument

The government respectfully requests a sentence of 87 months, followed by a lifetime term of supervised release. The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at ¶ 32. Dittmer III's criminal conduct will be addressed in a separate memorandum for his pending sentencing hearing and has largely been excised from this brief.
[13] *Id.* at ¶ 3.
[14] *Id.* at ¶ 101.
[15] *Id.* at ¶ 125.

treatment."[16] Among other factors, the Court should consider: "the nature and circumstances of the offense and the history and characteristics of the defendant;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[17] A sentence of 87 months adequately furthers these goals, reflecting the seriousness of the offense and the debilitating effects the offense has on the child victims, deterring Dittmer II from his criminal activities, promoting respect for the law, protecting the public, avoiding sentencing disparities, and providing Dittmer II with needed correctional treatment.

### A. The Applicable Sentencing Guidelines as Determined by U.S. Probation

The United States Probation Office calculated the advisory sentencing guidelines as follows:[18]

| | |
|---|---|
| Base Offense Level (USSG § 2G2.2(a)(2)): | 22 |
| Material Involved a Prepubescent Minor (USSG § 2G2.2(b)(2)): | +2 |
| Portrayal of Sadistic or Masochistic Conduct or Sexual Abuse of an Infant or Toddler (USSG § 2G2.2(b)(4)): | +4 |
| Use of a Computer (USSG § 2G2.2(b)(6)): | +2 |
| <u>600 or More Images (USSG § 2G2.2(b)(7)(D)):</u> | <u>+5</u> |
| **Adjusted Offense Level:** | **35** |
| Acceptance of Responsibility (USSG § 3E1.1(a)): | -2 |
| <u>Timely Acceptance of Responsibility (USSG § 3E1.1(b)):</u> | <u>-1</u> |
| **Total Adjusted Offense Level:** | **32** |

---

[16] *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)).
[17] 18 U.S.C. § 3553(a).
[18] PSR at ¶¶ 39-51.

4

1  The government agrees with the probation office's calculations as included
2  above. The government also does not dispute the probation office's calculation of
3  Dittmer II's criminal history, resulting in a Criminal History Category of I. Therefore,
4  Dittmer II's applicable guideline range is 121 to 151 months.
5  However, the parties also agreed to a downward variance (for reasons articulated
6  below) equivalent to three levels, adjusting Dittmer II's offense level to 29 and thereby
7  changing the calculated guideline range to 87 to 108 months.

**A. Defendant's Sentence**

The government respectfully requests a sentence of 87 months with lifetime supervision to follow. The government agrees that a downward variance to 87 months imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing.

Dittmer II has pleaded guilty to receiving child pornography files. Specifically, Dittmer II received an equivalent of 5,083 images across several different devices.[19] Receipt of child pornography is not a victimless crime.[20] All of the children depicted in Dittmer II's collection were victimized by Dittmer II's actions. Previous victims of child pornography have described in detail the pain that they suffer based upon the distribution and possession of images and videos of their abuse by individuals, like Dittmer II. Images of child pornography depict the worst and most intimate days of a child's life—the day that they were raped, tortured, assaulted, and/or abused by another. Often this abuse comes from someone the victim trusted—like a father, uncle, friend or

---

[19] PSR ¶ 18; Pursuant to U.S.S.G. § 2G2.2 Application Note 6(B)(ii), each video is considered to be 75 images.
[20] *See United States v. Blinkinsop*, 606 F.3d 1110, 1118 n. 7 (9th Cir. 2010).

coach. It should not be forgotten that while Dittmer II did not himself physically abuse these victims, he possessed the videos and images of their abuse for his own sexual gratification. Because of him and others like him, there is a market for these images without which the abuse would have ended at the time the abuser stopped abusing the victim. In this way, child pornography is the worst type of exploitation because it is never ending and extends the abuse *ad infinitum*. Victims have to live knowing that their abuse is being shared online to satisfy the sexual desires of individuals like Dittmer II who seek it out.

      There is little question that the crime of receipt of child pornography is serious. Congress and the United States Supreme Court have found that the prevention of sexual exploitation and abuse of children constitutes a government objective of great importance because of the psychological and physical effects such abuse has on children and their families.[21] Moreover, child pornographers use depictions of children engaged in sexual acts to show their victims that because other children do it, they should also participate. Additionally, research and experience also tell us that there is a fine line between those who view child pornography, and those who eventually act out what they have seen by sexually molesting children.

      Sentencing Dittmer II to 87 months adequately holds him responsible for his actions, protects the public, promotes respect for the law, and will deter Dittmer II and others from committing the same sort of crime.

      A complete consideration of Dittmer II's history and characteristics and the need to avoid unwarranted sentencing disparities justifies no greater variance than that which

---

[21] *See id.* at 1117.

6

the government recommends here. Congress enacted the PROTECT Act in 2003 to enhance the penalties for crimes involving the sexual exploitation of children. Congress also sought to restrict the ability of courts to grant downward departures in cases of sexual exploitation of children. The Commentary to U.S.S.G. § 5K2.0 explains that the standard for a downward departure in child crimes and sexual offenses differs from the standard for other departures in that it includes a requirement "that any mitigating circumstances that form the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure."[22]

Congress, the Supreme Court, and the Sentencing Commission also believe deterrence is a very important factor when dealing with this issue.[23] As explained in *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007):

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

Dittmer II's actions are serious, and an 87-month sentence will provide the deterrent effect that Congress, the Supreme Court and the Sentencing Commission consider to be very important.

---

[22] Commentary to §5K2.0, Scope of Policy Statement 4(B)(I).
[23] *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (citing *New York v. Ferber*, 458 U.S. 747, 760 (1982)).

7

An 87-month sentence also properly accounts for the history and characteristics of the defendant. The government's recommendation takes into account Dittmer's age and the fact that there is no indication, based on the evidence, that Dittmer has reoffended between the instant offense and now.[24] Additionally, the fact that Dittmer, without the government's urging, sought out counseling to address the underlying issues that prompted him to commit the crime also supports the need for the requested variance.[25]

The proposed 87-month sentence additionally avoids unwanted sentencing disparities, as it is consistent with other recent sentences for child-pornography related offenses in this district:

| Name | Charge | Date Sentenced | Post Plea Offense Level (Guideline) | Sentence Imposed |
|---|---|---|---|---|
| U.S. v. Gordon, 2:15-cr-186-JCM-NJK | Receipt | 11/7/2016 | 26 (63-78 mos.) | 70 months + Lifetime SR |
| U.S. v. Askren, 2:14-cr-314, GMN-GWF | Receipt | 5/1/2017 | 31 (108-135 mos.) | 120 months + 35 years SR |
| U.S. v. Anderson, 2:18-cr-85-JCM-CWH | Receipt / Distribution | 8/7/2018 | 29 (87-108 mos.) | 70 months + Lifetime SR |
| U.S. v. Busby, 2:15-cr-353-GMN-NJK | Receipt | 8/12/2019 | 30 (97-121 mos.) | 121 months + 45 years SR |
| U.S. v. Collings, 2:19-cr-311-JCM-DJA | Receipt | 6/26/2020 | 29 (87-108 mos.) | 87 months + Lifetime SR |

---

[24] PSR ¶ 119.
[25] Id.

In *Gordon, Askren, Anderson, Busby,* and *Collings,* the defendants pleaded guilty to and were convicted of the same offense to which Dittmer II has pleaded guilty. Four of those defendants were sentenced within the guidelines after the parties agreed and accounted for a two or three-level downward variance.[26] In *Anderson*, the parties agreed to a sentence that was equivalent to a four-level variance—leading to a sentencing outside of the applicable guidelines range.[27]

Here, just as in the majority of cases identified in the above table, the government recommends a downward variance from the applicable guideline range to achieve the 87-month sentence that the government recommends. Sentencing Dittmer II to a period of 87 months imprisonment is consistent with the approach taken in the above matters.

Additionally, sentencing Dittmer II to the specific term of 87 months is also consistent with sentences imposed upon similar offenders. For instance, in *Collings*, after calculating the variance, the defendant received 87 months where a number of similarities existed between that and the instant case—namely, a long period of time between the initial investigation and subsequent arrest, a lack of new incriminating behavior, and evidence of proactive steps to receive counseling.[28]

Taking into account the nature and circumstances of this case, the nature and circumstances of this offender, and comparable sentences for similarly situated defendants, a downward variance to achieve a sentence of 87 months is warranted. No

---

[26] *Gordon*, 2:15-cr-186 at ECF No. 38 (equivalent of a three-level variance); *Askren*, 2:14-cr-314 at ECF No. 106 (equivalent of a two-level variance); *Busby*, 2:15-cr-353 at ECF No. 114 (equivalent of a two-level variance); *Collings*, 2:19-cr-311 at ECF No. 5 (agreed upon three-level variance).
[27] 2:18-cr-85 at ECF No. 6.
[28] *Collings*, 2:19-cr-311 at ECF No. 5.

further variance is justified. An 87-month sentence is sufficient but not greater than necessary to protect the public, promote respect for the law, and to deter this defendant and others from committing the same sort of crime.

**C. Restitution**

Pursuant to the plea agreement and PSR, Dittmer II agreed to pay $5,000 per victim, unless a victim requests less, to any victim who requests restitution prior to sentencing.[29] Dittmer II agreed to pay this amount without requiring the government to disaggregate the loss attributed to the original sexual abuse or to other persons who disseminated, received, or possessed the child pornography images, from defendant's actions in this case.[30] The Court has received documents in connection with identified victims of the "LightHouse3," "Jenny," and "LightHouse1" series. Child pornography from each of these series was found within Dittmer II's collection. Therefore, Dittmer II's actions of receiving these child pornography files extend the abuse and injuries those victims suffer. The government respectfully requests that the Court order Dittmer II to pay restitution as detailed below, for a total amount of $9,000, as a result of his crimes:

- "Casseaopeia" (LightHouse3)   $3,000
- "Jenny"   $3,000
- "Maureen" (LightHouse1)   $3,000

    **Total:**   **$9,000**

**D. Supervised release**

The government concurs with the recommendation of the Probation Office that Dittmer II be subject to a lifetime term of supervised release. Lifetime supervision

---

[29] ECF No. 88 at 3.
[30] *Id.*

serves the purpose of helping Dittmer II stay accountable and continue to receive sex offender and mental health treatment after his release from custody and ensures the community of proper supervision. Thus, the government also respectfully requests a lifetime term of supervised release with the conditions of release as set forth in the PSR.[31]

---

[31] PSR at 29-31

## IV.   Conclusion

Based on the foregoing, the government respectfully requests Dittmer be sentenced to term of incarceration for 87 months, followed by lifetime supervision, with all of the conditions proposed in the Presentence Investigation Report.

**DATED** this 2nd day of July, 2021.

Respectfully Submitted,

CHRISTOPHER CHIOU
Acting United States Attorney

*/s/ Bianca R. Pucci*
BIANCA R. PUCCI
Assistant United States Attorney