2:18-cr-00302-JAD-NJK - July 15, 2021

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF NEVADA

 3   UNITED STATES OF AMERICA,    )
                                  ) Case No. 2:18-cr-00302-JAD-NJK
 4            Plaintiff,          )
                                  ) Las Vegas, Nevada
 5   vs.                          ) July 15, 2021
                                  ) 11:04 a.m. - 12:10 p.m.
 6   RICHARD FRED DITTMER II,     ) Courtroom 6D
                                  ) IMPOSITION OF SENTENCE
 7            Defendant.          )
     _____)  CERTIFIED COPY

 8

 9               REPORTER'S TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JENNIFER A. DORSEY
10                UNITED STATES DISTRICT COURT JUDGE

11

12   APPEARANCES:

13   For the Government: BIANCA R. PUCCI, AUSA
                          UNITED STATES ATTORNEY'S OFFICE
14                        501 Las Vegas Boulevard South, Suite 1100
                          Las Vegas, Nevada 89101
15                        (702) 388-6336

16
```

17   (Appearances continued on page 2.)

```
18

19

20

21   Court Reporter:     Amber M. McClane, RPR, CRR, CCR #914
                          United States District Court
22                        333 Las Vegas Boulevard South, Room 1334
                          Las Vegas, Nevada 89101
23                        (702) 384-0429 or AM@nvd.uscourts.gov

24   Proceedings reported by machine shorthand.  Transcript
     produced by computer-aided transcription.
25
```

1    APPEARANCES CONTINUED:

2    For the Defendant:

3         *MARGARET W. LAMBROSE, AFPD*
          *FEDERAL PUBLIC DEFENDER'S OFFICE*
4         *411 East Bonneville Avenue, Suite 250*
          *Las Vegas, Nevada 89101*
5         *(702) 388-6577*

6    Also Present:

7         *Sunny Cascio, USPO*

8         *Samira Barlow, Pretrial Services*

9

10                              * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LAS VEGAS, NEVADA; THURSDAY, JULY 15, 2021; 11:04 A.M.

2                              --o0o--

3                    P R O C E E D I N G S

4          **COURTROOM ADMINISTRATOR:**  Now's the time set for an

5    imposition of sentence in Case Number 2:18-cr-302-JAD-NJK,

6    United States of America versus Richard Fred Dittmer II.

7          Counsel, please state your appearances.

8          **MS. PUCCI:**  Good morning, Your Honor.  Assistant

9    United States Attorney Bianca Pucci on behalf of the

10   Government.

11         **MS. LAMBROSE:**  Good morning, Your Honor.  Maggie

12   Lambrose for Richard Dittmer who is present at liberty.

13         **THE COURT:**  All right.  Good morning, everyone.

14         So this is the hearing set for imposition of the

15   sentence upon Richard Fred Dittmer II in this case.  On

16   February 1st he appeared before the Court and entered a plea

17   of guilty to receipt of child pornography based on a written

18   plea agreement with the Government, and the Court accepted

19   that guilty plea and adjudicated him guilty of that charge.

20         In the plea agreement the parties estimated that the

21   adjusted offense level before -- actually, after acceptance of

22   responsibility would be a 29.  Probation has prepared a

23   Presentence Investigation Report in which it calculates the

24   offense level to be a 32 with a criminal history category of I

25   and recommends a sentence of 84 months followed by lifetime of

1    supervision and that's with a downward variance on the

2    custodial time.

3            I have reviewed the ample sentencing memo briefing

4    from both parties.  And I will just note I grant the

5    defendant's request to be permitted to file the reply brief,

6    which I have reviewed.  So that request -- the motion to file

7    a reply brief I grant, and I've reviewed it.

8            **MS. LAMBROSE:**  Thank you, Your Honor.

9            **THE COURT:**  That was at Document Number 111.

10           The Government is recommending a -- and requesting a

11   sentence of 87 months followed by lifetime supervision.  The

12   defense is asking for a five and five, five years of custody

13   because this is a mandatory minimum statutory sentence case

14   followed by five years of supervised release.

15           Has everyone had an opportunity to review the

16   Presentence Investigation Report?

17           **MS. PUCCI:**  Yes, Your Honor.

18           **MS. LAMBROSE:**  Yes, Your Honor.

19           **THE COURT:**  Ms. Lambrose, have you reviewed it

20   carefully with your client?

21           **MS. LAMBROSE:**  Yes, Your Honor.

22           **THE COURT:**  And are there any unresolved objections

23   at this time?

24           **MS. LAMBROSE:**  No, Your Honor.

25           **THE COURT:**  Okay.  All right.  So let's go ahead and

2:18-cr-00302-JAD-NJK - July 15, 2021

1    go through the guideline calculations then.  They begin in the

2    PSR on page 11.

3            Probation used the 2018 guidelines manual

4    incorporating all guideline amendments to determine the

5    offense level.

6            Do we agree it's the right version of the manual?

7            **MS. PUCCI:**  Yes, Your Honor.

8            **MS. LAMBROSE:**  Yes, Your Honor.

9            **THE COURT:**  Then Probation applied a base offense

10   level of 22 under 2G2.2(a)(2).

11           Do we agree that's the right base offense?

12           **MS. PUCCI:**  Yes, Your Honor.

13           **MS. LAMBROSE:**  Yes, Your Honor.

14           **THE COURT:**  Probation applied a two-level increase

15   because the material involved a prepubescent minor or a minor

16   who had not attained the age of 12 years.  So two levels were

17   applied under 2G2.2(b)(1).

18           Do we agree that one applies?

19           **MS. PUCCI:**  Yes, Your Honor.

20           **MS. LAMBROSE:**  Yes, Your Honor.

21           **THE COURT:**  Paragraph 41 has a four-level increase

22   under 2G2.2(b)(4) because the offense involved material that

23   portrays either sadistic or masochistic conduct or other

24   depictions of violence or sexual abuse or exploitation of an

25   infant or toddler.

1              Do we agree that that four-level increase applies?

2          **MS. PUCCI:**  Yes, Your Honor.

3          **MS. LAMBROSE:**  Yes, Your Honor.

4          **THE COURT:**  Paragraph 42 gives us an additional

5    two-level increase under 2G2.2(b)(6) because the offense

6    involved the use of a computer or an interactive computer

7    service for the possession, transmission, receipt, or

8    distribution of the material or for accessing with intent to

9    view it.

10             Do we agree that two-level increase applies?

11         **MS. PUCCI:**  Yes, Your Honor.

12         **MS. LAMBROSE:**  Yes, Your Honor.

13         **THE COURT:**  Turning to paragraph 43, a five-level

14   increase was applied under 2G2.2(b)(7)(D) because the offense

15   involved 600 or more images.  Here it was 593 still images and

16   60 videos and each video, video clip, movie, or similar visual

17   depiction is considered to have 75 images.  So when we do the

18   math we ultimately get 5,093 images of child pornography.

19             Do we agree that that five-level increase applies?

20         **MS. PUCCI:**  Yes, Your Honor.

21         **MS. LAMBROSE:**  Yes, Your Honor.

22         **THE COURT:**  And that gives us an adjusted offense

23   level of 35.  And then Probation applied a three-level

24   decrease for acceptance of responsibility.

25             Does the Government move for the third point, and if

1    so, why?

2         **MS. PUCCI:**  Yes, Your Honor, we do move for the third

3    point because the defendant did inform us prior to any trial

4    preparation of their -- it was a timely notice that they were

5    going to plead guilty.

6         **THE COURT:**  All right.  Then I do find that all of

7    the factors under 3E1.1(a) and (b) are satisfied by a

8    preponderance of the evidence.  I also find, based on the

9    information contained in the PSR about the facts of this case

10   and the -- what the investigation revealed and the content of

11   the images, that the increases in paragraphs 40 through 43 are

12   all satisfied by a preponderance of the evidence.  So that

13   gives us a total offense level of 32.

14        Turning to the criminal history computation on

15   page 14, Probation calculated the defendant's criminal

16   convictions to give him a criminal history score of zero which

17   establishes a criminal history category of I.  So we have

18   level 32, criminal history category I.

19        The minimum term of imprisonment for this offense is

20   five years.  The maximum term is 20 years.  With respect to

21   supervised release, the minimum term is five years; the

22   maximum is lifetime.  The maximum fine is $250,000, and a

23   special assessment of $100 is mandatory.

24        Do we agree all of those are accurate?

25        **MS. PUCCI:**  Yes, Your Honor.

2:18-cr-00302-JAD-NJK - July 15, 2021

```
1            MS. LAMBROSE:  Yes, Your Honor.
2            THE COURT:  Based on a level 32, criminal history
3    category I, the guideline imprisonment range is 1 -- 121 to
4    151 months followed by five years to lifetime supervision and
5    a fine range of $17,500 to $175,000.
6            Do we agree those are all accurate?
7            MS. PUCCI:  Yes, Your Honor.
8            MS. LAMBROSE:  Yes, Your Honor.
9            THE COURT:  All right.  I do find that Probation's
10   guideline calculations are accurate, and I adopt them.
11           I'm ready to hear argument in support of the
12   sentence.  And I will just note that it -- we have a pretty
13   high guideline range here.  So the guideline range essentially
14   starts at ten years, and all parties in this case all
15   acknowledge that that seems high for this -- the
16   circumstances, for this defendant, for this crime, for this
17   offense as we have presented here.
18           So everyone is in agreement that a variance downward
19   is appropriate.  The question seems to be how big of a
20   downward variance is the right answer here.
21           Ms. Pucci.
22           MS. PUCCI:  Thank you, Your Honor.
23           And do we -- would you like us to keep our masks on
24   while we argue?
25           THE COURT:  You can take it off if you want to.
```

2:18-cr-00302-JAD-NJK - July 15, 2021

1          **MS. PUCCI:**  Perfect.  Thank you, Your Honor.

2          The Government is asking for 87 months in this case.

3   We have taken into consideration the facts and circumstances

4   of the case as well as the nature and characteristics of this

5   defendant.  In agreeing to a three-level variance downward,

6   the Government has taken into consideration that the acts in

7   this case occurred in 2014 so the actions are quite old.  We

8   also took into consideration that since 2014 Mr. Dittmer II

9   has not reoffended in any sort of way.

10          We've also taken into consideration that Mr. Dittmer

11  had mental health services while he was on pretrial release

12  and he adhered to his conditions in pretrial release

13  throughout the time he has been released.

14          The history of the sentencing guidelines is something

15  that the Government has also taken into consideration, and in

16  doing so the Government continuously takes that into

17  consideration in these types of cases.  And that is why there

18  are sentencings of other defendants across this district in

19  which the Government provided to Your Honor in the sentencing

20  memo in which offenders of receipt of child pornography do

21  receive two to three-level variances.  In this case, we did

22  grant and we are arguing for a three-level variance based on

23  the nature of this defendant as well as a sentencing history,

24  guideline -- sentencing guideline history and the underlying

25  research regarding child pornography offenders and the risk of

1    recidivism.

2            The reason why we do not believe that a further

3    variance is warranted is because this is a very serious

4    offense.  The Sentencing Commission, in 2020, did indicate

5    that offenders who receive a sentence between 60 and 120

6    months is 17 percent less likely to be arrested for a new

7    offense.  And offenders who are 120 months at sentence or more

8    de -- increases the likelihood -- or, I'm sorry, indicates

9    that offenders are 30 to 45 percent less likely to be

10   incarcerated.  This shows that a higher sentence is a

11   deterrent effect.

12           Sixty months is just not appropriate in this case.  I

13   know defense counsel in the reply to the sentencing memo does

14   argue that the Sentencing Commission report in 2020 was not

15   specific to child offenders.

16           Recently, in June of 2021 the Sentencing Commission

17   actually produced another report, "Federal Sentencing of Child

18   Pornography:  Non-production Offenses."  And in that report

19   they discussed recidivism.  And specifically it said:

20   Although rap sheets are generally considered the best source

21   of data for recidivism studies, they can only be used to

22   determine the rate of known recidivism.  Some amount of

23   criminal activity, including recidivism, is unreported,

24   commonly referred to as the, quote, dark figure, end quote, of

25   crime.  This so-called dark figure of crime looms in sexual

1    offenses against children which often go unreported or

2    undetected and, therefore, will not appear on rap sheets.

3    Accordingly, any research on sex offender recidivism based on

4    reported arrests, including the Commission's recidivism

5    findings, should be viewed as a conservative measure of actual

6    recidivism.

7         So I just wanted to point that out to Your Honor,

8    that there is recidivism studies and it's a very conservative

9    recidivism study.  So the 17 percent less likely recidivism

10   for having a sentence higher than 60 months is appropriate to

11   be taken into consideration in this case.

12        Defense counsel also included in their reply cases of

13   coercion and enticement.  I want to differentiate those to

14   Your Honor so it is specifically aware that in *U.S. v.*

15   *Snagglers* it was an undercover officer case and not a real

16   child.  Again, in *United States v. Rocha* it was also an

17   undercover officer, and the defendant in that case did go to

18   trial and was sentenced to 120 months.  So to compare an

19   offender here, Mr. Dittmer II, who had child pornography

20   images of real children that he was addicted to in which he

21   admitted to his addiction, real children being portrayed in

22   those images.

23        I would also note that in trying to compare receipt

24   of child pornography offenders to coercion and enticement

25   cases, I do want to note for the record that in this district

2:18-cr-00302-JAD-NJK - July 15, 2021

1  we do request higher sentences and the Courts have granted

2  higher sentences when real children are involved, specifically

3  in *United States v. Fisher* --

4        **THE COURT:**  Hold on.  As opposed to what?

5        **MS. PUCCI:**  To the cases that defense counsel was

6  relying upon in their comparison of coercion and enticement

7  that were relying upon undercover officers cases --

8        **THE COURT:**  I got it.  Okay.

9        **MS. PUCCI:**  So in cases where there are real

10  children, in *United States v. Fisher*, one of the defendants,

11  Joshua Fisher -- and this is Case Number 2:17-cr-73 -- he was

12  sentenced to 25 years for his count of coercion and

13  enticement.  In the Justin Fisher case, who was a co-defendant

14  in that case, he received 30 years for coercion and enticement

15  where real children were involved --

16        **THE COURT:**  We don't have coercion and enticement

17  here; right?

18        **MS. PUCCI:**  I would agree, yes, Your Honor.  I'm just

19  simply trying to explain how coercion and enticement cases

20  cannot be compared to the receipt cases.  And when defense

21  counsel is trying to compare them indicating that the

22  Government offers 87-month sentences for coercion and

23  enticement, the cases she's relying upon are undercover

24  officers without real children.

25        **THE COURT:**  I see.  Thank you.

1          **MS. PUCCI:**  This is a -- not a victimless crime.

2     There are 60 videos and 593 images of child pornography of

3     real children.  Your Honor has before you three -- at least

4     three victim impact statements from these videos and images.

5     At this time I'm just going to read sections very briefly.

6          With regards to the victim of the "LightHouse" series

7     as -- known as "Casseaopeia," in the third paragraph she

8     explains part of the impact that is on her due to the receipt

9     and distribution of her images.  She states, "I know that my

10    image is being downloaded and watched by these kiddie porn

11    perverts all across the country.  I worry that they know who I

12    am.  I worry that they will come and look for me.  I worry

13    that they will come and hurt my family.  I'm terrified that

14    someone is stalking me.  I have changed my appearance so they

15    can't find me.  But I still have panic attacks when I think

16    someone is looking at me because they recognize me from the

17    Internet.  I have difficulty working or being in a public

18    place because of anxiety and want to hide somewhere safe."

19         And the victim from the "Jenny" series, just a very

20    brief portion in that second paragraph about halfway down, "I

21    worry about the pictures of me that are out there, and I hate

22    that others see them.  I have feared over the years that

23    someone would recognize me in public.  I wish only that every

24    single one can be found and destroyed some day.  It is

25    upsetting thinking about them, and I want them to go to jail

1    for doing it."

2            These victims are just two of the victims in the

3    collection that Dittmer II had and he is accountable for --

4            **MS. LAMBROSE:** Judge, I apologize. I really hate to

5    object in the middle of a sentencing hearing, but I do have to

6    just quickly make a record on this. The fact that I just

7    received these letters this morning, they're not dated.

8    They're not specific to this case, and I know that happens

9    commonly in child pornography cases. But we really have no

10   idea if these victims still feel this way now in 2021 and if

11   they feel this way about Mr. Dittmer specifically. So I just

12   want to quickly make a note that the weight that these letters

13   should be given should be minimal at best.

14           **THE COURT:** You can continue, Ms. Pucci.

15           **MS. PUCCI:** Thank you, Your Honor.

16           So these are just two victims of the 60 videos and

17   593 images Mr. Dittmer had in his collection that he is

18   accountable for.

19           A sentence of 87 months holds him accountable,

20   promotes respect for the law, and is not greater than

21   necessary. It is already a three-level variance downward and

22   which we do believe is applicable because of the nature and

23   circumstances of Mr. Dittmer's specific case and his -- and

24   his background.

25           We are asking that $9,000 in restitution be paid to

1    the three victims who have requested the $3,000 each.  And we

2    are seeking lifetime of supervised release and all the special

3    conditions of supervised release as recommended by the

4    Probation Department.  And we believe that all those

5    conditions are relatable to protecting the public, the

6    rehabilitation of Mr. Dittmer, and each of those conditions

7    should be imposed.  Thank you.

8            **THE COURT:**  Ms. Lambrose.

9            **MS. LAMBROSE:**  Thank you, Your Honor.

10           I do briefly want to address some of the statements

11    made by the Government.  First, when the parties were

12    negotiating this plea agreement and negotiating this

13    three-level enhancement, there was absolutely no discussion

14    about the history of the guidelines and the unreliability of

15    the child pornography guideline.  Indeed there was no

16    discussion about this, which is shown by the fact that every

17    single one of the applicable guidelines was applied to this

18    case because that's how this case was able to be resolved.

19    There was never a talk about, yes, the guidelines are not

20    supported by empirical data; yes, the guidelines are outdated;

21    and, because of that, a three-level enhancement is

22    appropriate.  That was not a part of the conversation.  So I

23    have to start by saying that.

24           And the second point that I want to make is the only

25    reason the coercion and enticement cases are mentioned is

1    because of the concurrence in *Henderson* where the judge

2    specifically said:  How is this rational that we have cases of

3    people who are viewing material and they're going to prison

4    for significantly longer sentences than those who are actually

5    enticing and coercing children.

6           So regardless of the fact that this was -- these were

7    cases that I cited to Your Honor having to do with undercover

8    officers, the point is these are all people who were actively

9    searching out children to abuse.

10          Mr. Dittmer, on the other hand, has been fully

11   rehabilitated for seven years.  Mr. Dittmer has absolutely no

12   history of any sort of abusive conduct against children or any

13   inclination of interests in children, which is shown by the

14   fact that he never participated in any of these communities

15   discussing child pornography, discussing ways to reach out to

16   and entice children.  All he did -- and it is serious, Judge.

17   Nobody is trying to minimize this.  It is serious.  But we

18   have to look at this case and these facts for what it is.  And

19   what he did is he viewed material on the computer.

20          So his sentence should not be -- and it would not be

21   a just sentence -- to sentence him to the same amount of time

22   in custody as people who try to abuse and coerce children.

23   That is why I made that point in my sentencing memo.  And

24   frankly, Your Honor, it's based on Ninth Circuit precedent of

25   concurrence acknowledging that these guidelines are highly

1    problematic.

2           So what I do want to now address is the Government's

3    request for 87 months in this case.  When Your Honor considers

4    the appropriate guideline range, as you are very, very well

5    aware, you start with the guidelines and then, under your

6    *Booker* discretion, you decide what the appropriate sentence

7    is.  And that decision is with Your Honor alone.

8           The Government asks the Court to sentence Mr. Dittmer

9    to 87 months, and the Government's request for this sentence

10   is weak, Your Honor.  The Government's request is based on the

11   number of images on his computer, which we all acknowledge --

12   the Ninth Circuit acknowledges, the Sentencing Commission

13   acknowledges -- that the number of images on a computer is in

14   no way an indicator of the level of culpability of an

15   individual defendant due to the development in technology.

16   The number of images on computers are now pretty much

17   applied -- across the board this enhancement is applied.  I

18   think that the Sentencing Commission found something like

19   96 percent of the time -- and I cited that in my sentencing

20   memo -- let me just get to that.  96.9 percent of cases have

21   this enhancement applied.  So, because of that, this

22   enhancement is now essentially inherent into the crime.  It

23   does not differentiate responsibility anymore.

24          So when you consider whether or not that this is an

25   appropriate sentence of 87 months and you consider the fact

2:18-cr-00302-JAD-NJK - July 15, 2021

1    that the Government relies on the number of images and the
2    number of images is something that the Sentencing Commission
3    has found is not empirically based and is outdated, the Court
4    should give little weight to that.  Of course Your Honor has
5    to apply that enhancement, but Your Honor can choose to
6    disagree with that enhancement based on a policy disagreement.
7    And that's *Kimbrough* -- I think I'm pronouncing it wrong, I
8    apologize -- and that's also *Henderson*.  So that's the first
9    basis.
10          The second basis for this -- for the Government's
11    request for 87 months is that Mr. Dittmer admitted that he had
12    an issue, an addiction -- he did say it, he admitted it -- to
13    child pornography over a decade ago, and he made that
14    admission to Metro in 2016, which was two years before he was
15    indicted on this case.  He admitted to them without even being
16    indicted, just being under investigation.  They questioned him
17    and he said, yes, I did have a problem, and this was on my
18    computer, and I do essentially acknowledge that I had this
19    addiction at one point.
20          So this is not a new admission.  This is nothing new.
21    Mr. Dittmer did not make this big pronouncement and admission
22    after he was indicted or after he pled guilty and now he's
23    coming before Your Honor and he's saying, yes, Your Honor, I
24    have a problem.  Mr. Dittmer said, yes, I had this problem in
25    2016, and in 2016 he said the problem was from years ago.

1          So the Government's reason for requesting an 87-month

2    sentence based on this admission is not a strong reason.

3          The last basis, the third reason that the Government

4    is asking Your Honor to impose an 87-month sentence in this

5    case, is they say that there is a fine line between people who

6    view CP and who commit hands-on offenses.  When they made the

7    statement in their response, they didn't cite anything.  And

8    what we know based on *Apodaca* and the Ninth Circuit's holding

9    in *Apodaca* is that there is not -- is not a correlation and

10   the data is showing that to be true and the 3553 factors, as

11   this case law and as the guidelines have developed, is showing

12   we cannot just say that across the board.  We have to look at

13   each case.  And not each case necessarily adds to something

14   else, which is why the Commission wants the guidelines to be

15   amended, which is why the Commission has asked repeatedly that

16   Congress amend these guidelines, and the only reason that the

17   guidelines haven't been amended, frankly, Your Honor, is

18   because it's not politically favorable.

19         But if we are to look at the data and we are to look

20   at technology and we are to look at what is happening now in

21   our society with everything being available via the Internet

22   and computers, we would have to acknowledge, as this circuit

23   has, that this Court is well within its discretion to say,

24   yes, I agree with the Sentencing Commission, this is outdated

25   information, and it's not empirically reliable.  So those are

1    the reasons that the Government asks for an 87-month sentence,
2    Your Honor, and they just are not sound.

3         I went into great detail in my sentencing memo, so
4    I'm not going to waste the Court's time because I know that
5    you read everything.  I have no doubt that you read
6    everything, so I'm not going to go through all of that to
7    recite the cases.  But I do think it is very, very important
8    when we talk about recidivism that we talk about recidivism
9    based on statistical information, and the stats that we have
10   show that -- and I want to get this right, Your Honor --
11   people who are convicted of these crimes are unlikely to
12   recidivate.  And people who are 50 years or older, as
13   Mr. Dittmer is, only have a 6.2 percent recidivism rate.

14        So when we look at these crimes specifically and we
15   look at Mr. Dittmer as a person and who he is and how old he
16   is, it is clear that the chances of recidivism in this case
17   are very low.

18        When we talk about the other 3553 factors, we have to
19   obviously talk about the protection of the public, and the
20   protection of the public and the low recidivism rate for child
21   pornography cases and people of Mr. Dittmer's age show that a
22   eight-year sentence in this case is not warranted.  Frankly,
23   Your Honor, the correct sentence in this case would be
24   probation, but that's not an option.

25        For Mr. Dittmer, he has been -- he has been

1    rehabilitated since 2016.  He has followed every rule that has

2    been imposed on him since this case began.  He will have very,

3    very strict conditions of supervised release for at least five

4    years.  He is working on himself daily, and he asked to be the

5    one to be able to be in counseling.  It wasn't even

6    recommended, and he wanted to be in counseling.  And

7    counseling has done extraordinary things for him to help him

8    with stress and to help him deal with his triggers.

9           So he has been rehabilitated.  The public does not

10   need to be protected from him, and he will be in prison for

11   five years regardless of what happens.

12          Deterrence, again, respect for the law, he has been

13   deterred, he respects the law.  There's nothing more that I

14   can show Your Honor other than my client's conduct, other than

15   who Rick is, other than everything that he has done.  He

16   showed this Court that he respects the law.  His actions have

17   showed this Court that he respects law enforcement.  As soon

18   as he talked to Metro in 2014, there was no more material

19   found on his devices.  He stopped.  And then, in 2016, he

20   acknowledged, yes, I had a problem.  And then, in 2018, he's

21   indicted.  And since that time he has done everything to show

22   that he accepts full responsibility.  He understands that

23   every single condition that is imposed on him, which are

24   extraordinarily stringent conditions on pretrial release for

25   defendants in these cases.  He has been on home confinement.

2:18-cr-00302-JAD-NJK - July 15, 2021

1   He has been a prisoner essentially in his home.  He can't even
2   go and get his mail because it's too -- his mailbox is too far
3   away from his house for the past two years.  He has not been
4   able to do anything.  He can't go to his mom's house without
5   getting permission.  He can't go to his sister's house.  He
6   has been in his home this entire time with nothing to do other
7   than think about his actions and think about his case and
8   think about the fact that what he did seven years ago is very,
9   very serious.  And that has been a punishment in and of
10  itself, Your Honor.
11          I'm going to let Mr. Dittmer's family talk more about
12  who he is because I think it's much more meaningful coming
13  from them than it is coming from me, but you see the character
14  letters.  You see that Mr. Dittmer is a man who is a
15  law-abiding, rule-following man.  He worked at the same job
16  his entire career.  He is a union person.  He has a pension.
17  He was a phenomenal employee for the entire time he worked
18  there.  And he is a solid, reliable person.  And that's what
19  you're going to hear from the family members who speak today,
20  Your Honor.
21          I'm also obviously requesting five years of
22  supervised release.  To support that recommendation, I did
23  cite Judge Fletcher's concurrence in *Apodaca* where essentially
24  the Court did affirm the lifetime supervision order that the
25  district court ordered, and that's a very -- the district

1    court has a high -- high discretion in ordering lifetime

2    supervision.  And the abusive of discretion standard was

3    obviously not met, and Judge Fletcher acknowledged that.  But,

4    you know, she did say we have to look at these cases on an

5    individual basis.  We can't just follow the supervised release

6    guideline because it's there.  We have to look at the data.

7    We have to look at whether or not people convicted of these

8    crimes are the same as people convicted of crimes against --

9    hands-on crimes against children.  And I submit to you,

10   Your Honor, they're not.

11            And just the way we cannot apply 2G2 mechanically, we

12   also cannot apply the supervised release guideline

13   mechanically in this case.  And a term of lifetime supervision

14   for somebody like Mr. Dittmer who is so well rehabilitated and

15   has accepted responsibility for 2016 would not be looking at

16   this case and this defendant for what is right here.

17            So for that reason, Your Honor, I do request a term

18   of supervised release of five years.  Mr. Dittmer would be 61

19   years old if Your Honor sentences him to prison for five years

20   and then sentences him to supervised release for five years.

21   By the time he is done with this case, he will be 61 years

22   old.  And you will always know and the Government will always

23   know and everybody can be confident that, because he is going

24   to be registered, that if anything at all happens, there's

25   always going to be a check on Mr. Dittmer for the rest of his

1    life.  So it's unnecessary -- it's unnecessary and it is more

2    than sufficient based on the facts of this case to impose

3    anything other than five-year term of supervised release in

4    this case.

5           Thank you, Your Honor.

6           **THE COURT:**  Thank you, Ms. Lambrose.

7           Mr. Dittmer, this is your opportunity to speak to the

8    Court and to tell me anything else that you think I should

9    consider in deciding what sentence to give you in this case.

10   Is there anything else you would like to say, sir?

11          **THE DEFENDANT:**  I would just like to, you know,

12   acknowledge, you know, full responsibility for my actions in

13   the past, and that I'm definitely not the same man that I was

14   yesterday than I am today.  And I -- I'm truly sorry for my

15   actions, and I -- I have changed.  And I'd like to say to my

16   family that I'm sorry for what this has put them through as

17   well.  It's very difficult.  I guess that's all.

18          **THE COURT:**  All right.  Thank you.

19          Ms. Lambrose, if anybody wanted to speak on his

20   behalf, the microphone is right there.

21          **MS. LAMBROSE:**  Thank you, Your Honor.

22          **THE COURT:**  Hi there.  Tell me your name.

23          **MS. AUSTIN:**  Hi, Your Honor.  My name is Denise

24   Austin.  I'm Rick's sister.

25          I just want to thank you for the time you've taken

1    to -- to listen to us.  And I'm not really quite sure what to

2    say, but I appreciate the Government's statistics.  We do not

3    take lightly being here or the charges.  We know they're very

4    serious.  My brother knows they're very serious.  But that is

5    not who he is.  He's a loyal man, an honest man.  And I don't

6    want anybody to forget that he is a son, he is a brother, he

7    is a father, he's an uncle, he's a man who is much loved.  And

8    he has taken the steps to do what is right and to adhere to

9    the guidelines that were set for him.

10          He doesn't even consider going one way or another.

11   This is what's set, this is what he does.  And he has been

12   very adamant about following those guidelines.

13          And he is not the same man he was when this all

14   started.  And I do truly believe that if the Court -- if you

15   show him mercy, it will not be abused.  He will not abuse it.

16   He will follow those guidelines.  He will not be one of those

17   statistics that fall back in to the same old behavior and the

18   same decisions.  He is not the same that he was.  This is --

19   this has had a great impact on him.

20          And I just want everybody to remember he's still a

21   human being, he's still a son, he's still a brother.  These

22   charges are not who he is.  They do not make him.

23          I don't know what else to say.  Thank you for your

24   time.

25          **THE COURT:**  Thank you.

1          **MS. LAMBROSE:**  Thank you, Your Honor.

2          And you've received letters from the other members

3     here.  Thank you.

4          **THE COURT:**  Thank you.

5          Ms. Barlow, did Pretrial want to add anything?

6          **PRETRIAL SERVICES OFFICER:**  No, Your Honor.

7          **THE COURT:**  Thank you.

8          Probation want to add anything?

9          **PROBATION OFFICER:**  No, Your Honor.  Thank you.

10         **THE COURT:**  All right.  Thank you.

11         Is there any -- I have victim impact statements.  But

12    just for the record, no one here to speak on behalf of the

13    Government; correct?

14         **MS. PUCCI:**  That's correct, Your Honor.

15         **THE COURT:**  Thank you.

16         Is there any reason, legal or just, why I should not

17    proceed with sentencing at this time?

18         **MS. PUCCI:**  No, Your Honor.

19         **MS. LAMBROSE:**  No, Your Honor.

20         **THE COURT:**  Thank you.

21         All right.  I have heard and read and considered the

22    charging document, the plea agreement, my notes from the plea

23    hearing, the Presentence Investigation Report, the copious

24    pages of sentencing memoranda filed by both sides and all of

25    the extended attachments to those documents, the letters in

1    support, Mr. Dittmer's statements here today, counsels'

2    arguments today, the eloquent and thoughtful words of his

3    sister, Denise.  And, of course, all of the factors and

4    considerations under § 3553(a).

5         Everyone here I think agrees that the guideline level

6    of 121 to 151 months is -- is excessive in this case.  Hence,

7    the three recommendations for variance -- downward variances.

8         There are a number of considerations that factor into

9    the appropriate sentence for this case and for this defendant.

10   The offense is undeniably very serious.  Mr. Dittmer was in

11   receipt of numerous child pornography images and videos

12   depicting minor victims being sexually abused and sadistic or

13   masochistic sex acts against young prepubescent children.  The

14   types of images he was in receipt of are deeply contemptible

15   and they continue to revictimize their subjects.  That is just

16   the nature of them.  Significant custodial sentences are

17   necessary for these crimes for, among other things,

18   deterrence.

19        As to his personal history and characteristics,

20   Mr. Dittmer has no criminal history other than parking or

21   traffic citations.  He's been a working member of society.  He

22   has been on successful pretrial supervised release since his

23   arrest in 2018, and he has been attending treatment and he

24   hasn't reoffended since the 2014 search.  He is remorseful.

25   He has taken responsibility for his actions.  He has family

1    and community support, and he is otherwise a law-abiding,

2    rule-following person.

3         I find that the application of the guidelines in this

4    case would yield an excessive sentence under the 3553(a)

5    factors.  I also remain bound by a statutory mandatory minimum

6    60-month sentence.  And I, too, acknowledge that in my now

7    eight years on the bench, my eight years of sentencing on

8    child pornography receipt cases, every one of them was --

9    involved a computer and involved thousands of images as

10   defined by the guidelines.  So those enhancements,

11   essentially, those additional considerations I think have

12   applied without exception, and those are legitimate concerns

13   and considerations in considering the guidelines, considering

14   the statements of the Commission, but also applying as I must

15   and hewing faithfully to, as I must, the 3553(a) factors while

16   also recognizing a statutory mandatory minimum in this case.

17        So when I consider all of this, I vary down and find

18   that a sentence of 64 months followed by five years of

19   supervised release is sufficient but not greater than

20   necessary to accomplish the goals and objectives of

21   sentencing.  I believe this sentence takes into account the

22   nature and circumstances of the offense, the history and

23   characteristics of the defendant, the kinds of sentences

24   available, the sentencing range, and the policy statements of

25   the Sentencing Commission.  It reflects the seriousness of the

2:18-cr-00302-JAD-NJK - July 15, 2021

1    crime, promotes respect for the law, provides just punishment,

2    affords adequate deterrence to criminal conduct, will help

3    protect the public, will provide -- or will avoid sentencing

4    disparities, and is consistent with the public policy favoring

5    enforcement of negotiated plea agreements.  So the defendant

6    is committed to the Bureau of Prisons for a term of 64 months.

7            Let's talk about supervised release conditions.

8    Ms. Lambrose, in the PSR Probation recommends a number of

9    conditions.  Do you have any objections to those?  They begin

10   essentially on page 29.

11           **MS. LAMBROSE:**  Yes, Your Honor.  One of the

12   conditions I was just briefly able to confer with Probation

13   about and that would be condition -- and Probation, please

14   correct me if I'm wrong at all.  That would be Condition

15   Number 12, which would be the computer search and monitoring

16   condition.  That one is --

17           **PROBATION OFFICER:**  Condition 11, Maggie.  Sorry.

18           **MS. LAMBROSE:**  Oh.  Twelve is the one that includes

19   both.

20           **PROBATION OFFICER:**  Correct.

21           **MS. LAMBROSE:**  So 11 would be just the computer

22   search condition.  So since 12 is computer search and

23   monitoring, Condition 11 is superfluous because Condition 11

24   is computer search, which is subsumed by Condition 12.  So I

25   would ask that condition 11 be struck.

1      **THE COURT:**  Does Government have a response to that?

2      **MS. PUCCI:**  Your Honor, I do believe that the

3   computer search condition is included in -- I would

4   actually -- believe it's included in paragraph 6 in which it

5   indicates electronic communications or data storage devices as

6   defined and computers as defined in 18 USC 1030(e)(1), and

7   then the other portion of it would be in 12.  So I would not

8   object to that.

9      **THE COURT:**  Let me hear from Probation on that

10   condition.

11      **PROBATION OFFICER:**  Your Honor, the Government's

12   representation is correct.  We -- our office recently got --

13   received guidance last week about this.  We've been kind of

14   going back and forth on this.  So the Government is correct

15   that the Condition 11 is covered under the Special Condition

16   Number 6.

17      **THE COURT:**  Thank you.

18      Anything else, Ms. Lambrose?

19      **MS. LAMBROSE:**  The only other objection that I have

20   is -- would be to the polygraph condition, which would be

21   special Condition Number 9.  And, Your Honor, I recognize that

22   there are a number of special conditions, as there are in

23   every single one of these cases.  And Mr. Dittmer, because he

24   is so dedicated to doing whatever is required of him while on

25   supervised release, he -- he has made it clear to me that he

1   does not want me to object to these other conditions that I

2   normally object to.  But he has no problem with them because

3   he wants to do whatever it necessary while on supervised

4   release.

5          But the only condition that I am concerned about is

6   the polygraph testing condition.  And I know that the circuit

7   has found that that condition is a sound condition in these

8   cases and that it does not violate the Fifth Amendment.  So

9   there is no argument from me there.  My argument is that this

10  condition is unnecessary under the factors that the Court must

11  consider, and that is, essentially, is this condition narrowly

12  tailored to this defendant.  And there is no -- there has been

13  no indication at all that Mr. Dittmer has been dishonest.  If

14  anything, I think it's the exact opposite.  I think that

15  Mr. Dittmer has been completely forthcoming with Probation.

16  He's been completely forthcoming -- I mean, I'm sorry,

17  Pretrial.  And frankly, Probation, too, Your Honor, because he

18  did disclose all his financial records.  He was perfectly

19  happy for Probation to see his treatment records from

20  counseling.  So he has erred on the side of over-inclusion

21  when it comes to his honesty with Pretrial and Probation and

22  the Court and, frankly, law enforcement.

23         But the problem that I have with polygraph testing is

24  specifically that it's just unreliable.  The Ninth Circuit has

25  found in a number of contexts that the polygraph testing is,

1    you know, to be viewed with extraordinary caution and is not

2    admissible.  So, because of the fact that it is an unreliable

3    science, frankly, and because it is unnecessary for

4    Mr. Dittmer and the facts of this case, I would object to that

5    condition.

6          **THE COURT:**  Ms. Pucci?

7          **MS. PUCCI:**  Thank you, Your Honor.

8          We would be seeking the polygraph testing condition

9    remain as a condition of supervised release.  This case is a

10   very serious case, as Your Honor has identified.  And it is

11   necessary to effect the supervision of sex offenders and to

12   ensure that no contact offenses occur and that he does not

13   reoffend at any time during his supervised release/probation

14   period.  It's also a deterrence in which he would be held

15   accountable.

16         And as defense counsel indicated, it's not admissible

17   for proof beyond a reasonable doubt in guilt cases, but it is

18   something that is used during probation to ensure that the --

19   the other conditions are being met and the other conditions

20   are being obeyed.  And I believe that the polygraph testing is

21   reasonably related to his supervised release, his

22   rehabilitation and deterrence, as well as protecting the

23   public with that deterrence.

24         **THE COURT:**  All right.  Thank you.

25         Any other objections, Ms. Lambrose?

2:18-cr-00302-JAD-NJK - July 15, 2021

1          **MS. LAMBROSE:**  No, Your Honor, other than just to

2    mention that everything that Ms. Pucci just said,

3    respectfully, has nothing to do with this specific case.  She

4    didn't mention anything about Mr. Dittmer specifically or his

5    actions or his conduct that would make this condition a

6    reasonable condition tied to the goals of supervised release.

7    So for that I would, again, reiterate that there's nothing to

8    support this condition for Mr. Dittmer in this case.

9          **THE COURT:**  All right.  So while on supervision

10   Mr. Dittmer will be required to comply with the standard

11   conditions of supervision recommended by the Sentencing

12   Commission and the mandatory conditions of not committing

13   another crime, not unlawfully possessing a controlled

14   substance, and refraining from the unlawful use of a

15   controlled substance.  But I do suspend the drug testing

16   condition because I determine that he poses a low risk of

17   future drug abuse.  He'll have to make restitution in

18   accordance with statute and cooperate in the collection of

19   DNA.  He also must comply with the requirements of the Sex

20   Offender Registration and Notification Act, SORNA, as directed

21   by the probation officer, the Bureau of Prisons, or any state

22   sex offender registration agency in any state in which he

23   resides, works, is a student, or was convicted of a qualifying

24   offense, which is this offense.

25          Additionally, I will pose -- impose the mental health

1    treatment condition.  The access to financial information.

2    Debt obligations.  Minor prohibition.  Place restriction.

3    Search and seizure.  No pornography.  Sex offender treatment.

4            I overrule the objection to Number 9, the polygraph

5    testing, and I impose it because I defer to Probation's need

6    for this condition as a tool for enforcement.

7            I impose the computer monitoring condition in

8    paragraph 10.  I sustain the defendant's objection to the

9    paragraph Number 11, and I do not impose paragraph Number 11

10   because I do find it's sufficiently redundant of paragraph 6

11   and paragraph 12.  And I do impose the computer search

12   monitoring software condition in paragraph 12.

13           And I find that all of these conditions are

14   reasonably related to the goals of deterrence, protection of

15   the public, or rehabilitation; that they involve no greater

16   deprivation of liberty than is reasonably necessary to achieve

17   those goals; and that they are consistent with the pertinent

18   policy statements issued by the Sentencing Commission.

19           A mandatory penalty assessment of $100 is required by

20   statute.  It's hereby imposed, and it is due immediately.  I'm

21   not imposing a fine.

22           This -- let's talk about restitution.  I understand

23   we are focusing on "LightHouse1," "LightHouse3," and the

24   "Jenny" cases; is that correct?

25           **MS. PUCCI:**  Yes, Your Honor.  Those three victims did

1    request restitution.  I did speak with their counsel, and they

2    are amenable to $3,000 each.

3            **THE COURT:**  Any objection, Ms. Lambrose?

4            **MS. LAMBROSE:**  There's no objection, Your Honor.

5    Mr. Dittmer wants to take responsibility for that, and he will

6    pay that restitution.  I just ask that the restitution order

7    be stayed while he is in custody and any interest accruing

8    while he is in custody also be stayed because -- and I can get

9    into that in a minute, if Your Honor would like to address

10   that later.

11           **THE COURT:**  Why don't you go ahead and tell me now.

12           **MS. LAMBROSE:**  Okay.  Thank you, Your Honor.

13           So the reason for this request is if the restitution

14   order is in the judgment and it essentially begins to run now

15   at -- due and payable upon execution of the judgment, then

16   that means that all of his commissary is essentially

17   susceptible to be taken to pay the restitution.  So he has

18   absolutely no problem paying the restitution.  He just asks

19   that he be allowed to do so when he is released so that, when

20   he has money on his books for food and for hygiene products,

21   that money is not essentially taken to pay a restitution

22   judgment.

23           And then obviously, for the interest, I would ask

24   that the interest be stayed because he's not going to be able

25   to be paying on restitution while he's in custody.  So to have

1    the interest accruing while he is in custody would be -- would

2    be an extraordinary hardship for him.

3             THE COURT:  Ms. Pucci, does the Government have a

4    position on that request?

5             MS. PUCCI:  Your Honor, I believe by law the

6    restitution has been ordered today.  I don't have a problem

7    that the payments be paused and not required to be paid and I

8    don't have a problem with the interest essentially being

9    paused and not accruing while he's in custody, but I do

10   believe that the order for restitution must be entered today

11   with the sentencing order.  But I understand kind of the

12   commissary issue, and I'm not trying to impose or impede on

13   that.  But I do believe that the restitution order needs to be

14   in place in -- ordered paid in full today but can be on a

15   payment plan beginning after he is released from custody.

16            MS. LAMBROSE:  And that's correct, Your Honor.  I

17   agree with Ms. Pucci on that.

18            THE COURT:  All right.  Then I do order the defendant

19   to make restitution on the "Casseaopeia" (LightHouse3),

20   "Jenny," and "Maureen" (LightHouse1) items in the amount of

21   $3,000 each for a total of $9,000.

22            This is an offense for which restitution is

23   authorized by statute.  I find the amount of actual loss

24   sustained by these victims as a result of this offense is

25   $3,000 each based on the extensive information that -- victim

2:18-cr-00302-JAD-NJK - July 15, 2021

1    impact statements and the parties' agreement that this is an

2    appropriate amount.

3         And I will include in the judgment that the payments

4    must begin upon release from incarceration, and I do not order

5    interest to accrue on the judgment.

6         **MS. LAMBROSE:**  Thank you, Your Honor.

7         **THE COURT:**  No forfeiture?

8         **MS. PUCCI:**  There actually is, Your Honor.  There is.

9    I do have a Final Order of Forfeiture.  It was filed at ECF

10   Number 102.  I have a copy, if Your Honor needs it.

11        **THE COURT:**  Hold on.

12        Ms. Lambrose, have you had an opportunity to review

13   the proposed -- there we go -- proposed forfeiture order?

14        **MS. LAMBROSE:**  I have, Your Honor, and we have no

15   objection to the Court entering that order.

16        **THE COURT:**  All right.  Having reviewed it now, it

17   does appear to be consistent with the plea agreement, and so I

18   hereby order the defendant to forfeit to the United States

19   those assets identified in this order.  And I will sign that

20   proposed order.

21        All right.  Mr. Dittmer, in your plea agreement you

22   waived most of your rights to appeal.  Some appellate rights,

23   however, cannot be waived.  To the extent that you've retained

24   some rights to appeal in limited and narrow circumstances, I'm

25   advising you that you have 14 days to file a notice of appeal.

1   If you cannot afford an attorney to handle your appeal, one

2   will be appointed to represent you.  If you cannot afford a

3   transcript of the record in this case, one will be prepared

4   for appeal at the Government's expense.

5          Do you understand all of that, sir?

6          **THE DEFENDANT:**  Yes, I do.

7          **THE COURT:**  Are there charges to be dismissed against

8   this defendant?

9          **MS. PUCCI:**  Yes, Your Honor.  Count Number 3.  We

10  would ask at this time that Count 3 as to Dittmer II be

11  dismissed.

12         **THE COURT:**  All right.  Count 3 as to this defendant,

13  Richard Fred Dittmer II, will be dismissed as I confirm that I

14  have accepted the non-binding plea agreement in this case and

15  sentenced the defendant accordingly.

16         Ms. Lambrose, any recommendations for the BOP

17  placement?

18         **MS. LAMBROSE:**  Yes, Your Honor.  We have two

19  recommendations.  The first would be for Terminal Island.  And

20  the reason for that request, as Your Honor is aware, that is a

21  medical facility.  Mr. Dittmer, although he does not have any

22  significant health issues currently, he is overweight and he

23  is older.  And he specifically asked me to make this

24  recommendation because it is difficult for him and it's

25  getting more difficult for him due to joint issues to get

1   around easily.  And with general facilities, there's a lot of
2   movement and they don't make movement easy on people in
3   general population.  So, because of that reason, they would be
4   able to accommodate him.  So first request would be Terminal
5   Island.
6            And my second request would be Sheridan, which is in
7   Oregon.  Is that -- and the reason for that is, Your Honor,
8   the ability to program and -- really primarily the programming
9   that's available at Sheridan.  Sheridan right now is a very,
10  very good facility, and they're offering a wide array of
11  programs.  So that would be the reason that he would like that
12  request.
13           **THE COURT:**  Okay.  That will be the recommendation
14  then:  Terminal Island and, alternatively, Sheridan.
15           **MS. LAMBROSE:**  Thank you, Your Honor.
16           And I apologize.  I know this has gone very long, but
17  I do think we probably should address the JVTA special
18  assessment.
19           **THE COURT:**  But I think this offense was too early.
20           **MS. LAMBROSE:**  That's what I -- I just want to make
21  sure that we're all --
22           **MS. PUCCI:**  Yes.
23           **MS. LAMBROSE:**  Okay.  I just want to make sure that
24  we're all on the same page.
25           **THE COURT:**  Right.  Those are 2015 and beyond; right?

2:18-cr-00302-JAD-NJK - July 15, 2021

1      **MS. PUCCI:**  Correct.

2      **THE COURT:**  Yes.  And this was a 2014.

3      **MS. LAMBROSE:**  Yes.  I just wanted to make sure that

4   I had that on the record.  Thank you, Your Honor.

5      **THE COURT:**  Thank you.

6      I realize how cryptic that record is going to look,

7   but the JVTA does not apply to offenses that occurred at the

8   time the offense of conviction in this case happened.

9      **MS. LAMBROSE:**  Thank you, Your Honor.

10     **THE COURT:**  It only applies to later offenses, and so

11  the JVTA is not at play in this sentencing.

12     Pretrial is recommending that the defendant be

13  continued on pretrial release on bond pending his

14  self-surrender; is that correct?

15     **PRETRIAL SERVICES OFFICER:**  Yes, Your Honor.

16     **THE COURT:**  Any objection by the Government?

17     **MS. PUCCI:**  No, Your Honor.

18     **THE COURT:**  Okay.  We just need to amend his travel

19  conditions so we can -- any objection to that, Ms. Lambrose?

20     **MS. LAMBROSE:**  No, Your Honor.  I was just going to

21  request a 90-day self-surrender date, and I've talked to the

22  Government and Pretrial about that and the parties don't have

23  an objection.

24     **THE COURT:**  Is that true?

25     **MS. PUCCI:**  That's correct, Your Honor.

2:18-cr-00302-JAD-NJK - July 15, 2021

1      **THE COURT:**  Okay.  All right.  So we will amend the

2  conditions to lift the travel restriction so that he can

3  travel to the BOP designated facility to self-surrender.

4      Is there anything else that I need to -- oh yeah.

5  No.  I need to ask Probation to provide Mr. Dittmer a copy.

6  It's been so long since I have done an in-person sentencing

7  that I completely forgot that's how we do that.

8      I will let the record reflect that Probation has just

9  provided Mr. Dittmer with a written copy of his conditions of

10  supervised release.  Thank you very much.

11      All right.  So you're going to be able to stay out on

12  bond on your same pretrial release conditions until you have

13  to self-surrender.  The BOP is going to let you know what

14  facility that is that you to self-surrender at.  Okay?

15      **THE DEFENDANT:**  Thank you.

16      **THE COURT:**  Anything else that I need to address?

17      **MS. PUCCI:**  No, Your Honor.  Thank you.

18      **MS. LAMBROSE:**  No, Your Honor.  Thank you.

19      **PROBATION OFFICER:**  Danielle, do we have a date for

20  self-surrender?

21      **COURTROOM ADMINISTRATOR:**  Self-surrender will be by

22  noon on October 18th.

23      **THE COURT:**  All right.  All right.  Well, thank you,

24  everyone.  Mr. Dittmer, I wish you the best of luck, sir.

25      **THE DEFENDANT:**  Thank you, Your Honor.

2:18-cr-00302-JAD-NJK - July 15, 2021

```
1              THE COURT:  We're adjourned.

2          (Proceedings adjourned at 12:10 p.m.)

3                         --o0o--

4              COURT REPORTER'S CERTIFICATE

5

6      I, AMBER M. McCLANE, Official Court Reporter, United

7  States District Court, District of Nevada, Las Vegas, Nevada,

8  do hereby certify that pursuant to 28 U.S.C. § 753 the

9  foregoing is a true, complete, and correct transcript of the

10  proceedings had in connection with the above-entitled matter.

11

12  DATED:  8/3/2021

13

14                      /s/_____Amber M. McClane_____

15                      AMBER McCLANE, RPR, CRR, CCR #914

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914        *Page 42*